1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11    LAWRENCE E. GOMES,                    Case No. CV 17-7022 SVW (SS)

12                    Plaintiff,
                                            **MEMORANDUM DECISION AND ORDER**
13         v.
                                            **DISMISSING FIRST AMENDED**
14    DAVID M. MATHIS, M.D., et al.,
                                            **COMPLAINT WITH LEAVE TO AMEND**
15                    Defendants.

16

17                              **I.**

18                         **INTRODUCTION**

19

20         Plaintiff Lawrence E. Gomes, a California state prisoner

21    proceeding pro se, constructively filed a civil rights complaint

22    pursuant to 42 U.S.C. § 1983 on September 20, 2017.[1] ("Complaint,"

23    Dkt. No. 1). The Court dismissed the Complaint with leave to amend

24    _____
      [1] The "mailbox rule" announced by the Supreme Court in Houston v.
25    Lack, 487 U.S. 266 (1988), applies to § 1983 cases. See Douglas
      v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009). Pursuant to the
26    mailbox rule, pro se prisoner legal filings are deemed filed on
      the date the prisoner delivers the document to prison officials
27    for forwarding to the court clerk. Id. The Court adopts the date
      Plaintiff signed the Complaint as this action's constructive filing
28    date. See Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014).

due to pleading defects.  (Dkt. No. 8).  Pending before the Court is Plaintiff's First Amended Complaint.[2]  ("FAC" Dkt. No. 9).

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee.  28 U.S.C. § 1915A(a).  This Court may dismiss such a complaint, or any portion, before service of process if it concludes that the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).  For the reasons stated below, the Court DISMISSES the FAC with leave to amend.[3]

\\

\\

---

[2] The filing of an amended complaint supersedes, i.e., entirely supplants or replaces, the original or any prior complaint, which is "treated thereafter as nonexistent."  Ramirez v. Cnty. of San Bernardino, 806 F.2d 1002, 1008 (9th Cir. 2015) (internal quotation marks and citation omitted).  Accordingly, the Court may not refer to or incorporate by reference any allegations in the original Complaint when determining whether the FAC states a claim.

[3] A magistrate judge may dismiss a complaint with leave to amend without the approval of a district judge.  See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) (finding that "the dismissal of a complaint with leave to amend is a non-dispositive matter").  Consistent with McKeever, the Court concludes that its Order Dismissing First Amended Complaint with Leave to Amend is a non-dispositive Order.  However, pursuant to Federal Rule of Civil Procedure 72, if Plaintiff disagrees, he may file an objection with the District Judge.  See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015).

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

Plaintiff sues five Defendants: California Medical Facility-Vacaville physicians (1) Dr. David M. Mathis ("Mathis") and (2) Dr. Mariana Lotasztain ("Lotasztain"); (3) J. Clark Kelso, the court-appointed federal Receiver overseeing the California Department of Corrections and Rehabilitation ("CDCR") medical health care system ("Kelso" or "Receiver"); (4) the Western Interstate Corrections Compact ("WICC") Unit of the CDCR's Sacramento Control Office ("SACCO"); and (5) the California Correctional Health Care Services ("CCHCS"). (FAC at 3-4).[4] Mathis and Lotasztain are sued in their individual capacities. (Id. at 3). Kelso is sued in his official capacity. (Id.).

Plaintiff alleges that a female correctional officer raped him in an Arizona prison, where he was housed pursuant to the WICC. (Id. at 5). The FAC's allegations do not identify the prison, the correctional officer, or the date of the alleged rape(s). However, several exhibits attached to the FAC indicate that Plaintiff complained to prison officials in Arizona during the Spring and summer of 2008 of an alleged rape. (See, e.g., id. at 37 (Arizona Dep't of Corrections ("ADC") health staff record dated May 30, 2008 reflecting that Plaintiff complained that he had been sexually

---

[4] The Court will cite to specific pages of the FAC, including its many exhibits, as though they formed a single, consecutively paginated, document. Where printing appears on the front and back of a page, the Court will cite to the page number with the letter "a" or "b" to distinguish the front ("a") and back ("b") sides.

assaulted by a female staff member on April 2, 2008); id. at 39 (ADC grievance dated July 27, 2008 in which Plaintiff demanded professional counseling "after being rape[d] by a Arizona Dept of Corrections staff member").

The FAC summarily alleges that Mathis and Lotasztain "failed to provide adequate medical treatment for a variety of conditions and injuries," including "further PREA [Prison Rape Elimination Act] injuries." (Id. at 5). CCHCS is responsible "for injuries caused when a correctional officer raped Plaintiff in an Arizona prison," for failure to provide PREA follow-up mental health care, and for failure to maintain Plaintiff's entire mental health medical records relating to the rape, in violation of its own regulations. (Id.). The Kelso and the SACCO WICC Unit "failed to intervene and help [Plaintiff] when he was being raped in the Arizona facility, put in the hole, write up [sic] and retalliated [sic] against." (Id.). Plaintiff also generally alleges that he "has been denied medically necessary and follow up treatment and care plans and necessary referrals by CCHCS physicians . . . and [has been] stonewalled by CCHCS Grievance Coordinator, and told [to] go away." (Id.).

The FAC alleges that each of the Defendants is liable for deliberate indifference to Plaintiff's serious medical needs. (Id.). Plaintiff is seeking $100,00 in compensatory damages, $100,000 in punitive damages, and $100,000 in "nominal" damages from each Defendant, which, in the case of CCHCS, Plaintiff specifies are for "past or future medical costs." (Id. at 6).

4

**III.**

**DISCUSSION**

Under 28 U.S.C. section 1915A(b), the Court must dismiss the FAC due to multiple pleading defects. However, the Court must grant a <u>pro se</u> litigant leave to amend his defective complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). Accordingly, for the reasons stated below, the First Amended Complaint is DISMISSED with leave to amend.

**A.    The FAC Fails To State A § 1983 Claim Based On The WICC**

"The [Western Interstate Corrections Compact] is a cooperative agreement enacted by participating states, which provides for the transfer of inmates of a correctional institution of one party state to another party state, where the receiving state has superior or more desirable facilities for rehabilitation or treatment." <u>Monroe v. Kernan</u>, 2017 WL 4082365, at *4 (C.D. Cal. June 15, 2017). To the extent that Plaintiff is alleging that the CDCR's "Sacramento Control Office" is somehow liable for implementing or violating the WICC, the FAC fails to state a § 1983 claim because the WICC is not federal law and does not give rise to a federally-protected liberty interest.

"A state compact is transformed into federal law, and thus may be the basis for a 1983 action, when (1) it falls within the

scope of the Constitution's Compact Clause, (2) it has received congressional consent, and (3) its subject matter is appropriate for congressional legislation." Ghana v. Pearce, 159 F.3d 1206, 1208 (9th Cir. 1998) (some internal citations omitted). However, as the Ninth Circuit explained with respect to the Interstate Corrections Compact ("ICC"), which is substantively identical to its regional counterpart, the WICC,[5] such a compact is not federal law because the procedures governing the transfer of prisoners "are a purely local concern and there is no federal interest absent some constitutional violation in the treatment of these prisoners." Id. Furthermore, the compact does not create a federally-protected liberty interest because the application of its procedures "does not impose an 'atypical and significant hardship.'" Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). As such, the ICC (and the WICC) "cannot be the basis for a section 1983 action." Ghana, 159 F.3d at 1208; see also Daugaard v. Baldwin, 1999 WL 778585, at *7 (D. Or. Sept. 17, 1999) ("[V]iolations of the ICC and the WICC are not subject to federal § 1983 challenges[.]"). Accordingly, the FAC must be dismissed, with leave to amend.

**B.    The Eleventh Amendment Bars Claims For Money Damages Against The CDCR, Including Its Arms The SACCO And CCHCS**

The FAC sues two arms of the CDCR -- the WICC Unit of the CDCR's Sacramento Control Office, and the California Correctional

---

[5] "Except for the enumeration of signatories on the WICC, the WICC and the [ICC] are identical in purpose and construction[.]" Garcia v. Schwarzenegger, 2007 WL 2782850, at *1 n.1 (N.D. Cal. Sept. 25, 2007), aff'd, 327 F. App'x 689 (9th Cir. 2009).

Health Care Services. (FAC at 6). However, the Eleventh Amendment bars suits for money damages against states and their agencies under § 1983. See Howlett v. Rose, 496 U.S. 356, 365 (1990); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (dismissal of civil rights action "as to the Department of Prisons was proper" because "[t]he Nevada Department of Prisons, as a state agency, clearly was immune from suit under the Eleventh Amendment"). "California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court." Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009). Therefore, the CDCR, a state agency, is protected from suit under the Eleventh Amendment, id., as are its arms, including the SACCO and the CCHCS. See Valdez v. Warden of PVSP, 2017 WL 3705306, at *3 (E.D. Cal. Aug. 28, 2017) ("Because CCHCS is a state agency, it is entitled to Eleventh Amendment immunity from suit."). However, a plaintiff may seek monetary damages under § 1983 from state employees in their individual capacity. See Adler v. Lewis, 675 F.2d 1085, 1098 (9th Cir. 1982) ("State officials must be sued in their individual capacity in an action for monetary damages."). Accordingly, the FAC is dismissed, with leave to amend.

**C.    The FAC's Claims Against The Receiver May Be Barred By The Doctrine Of Quasi-Judicial Immunity**

The FAC alleges that J. Clark Kelso, in his official capacity as the Receiver over the CDCR's health care services, is liable for failing to "intervene and help [Plaintiff] when he was being raped in the Arizona facility, put in the hole, write up, and

retalliated against [sic]." (FAC at 5). As the Court explained in dismissing the original Complaint, the Receiver may be sued in his official capacity for claims related to the business operations of the CDCR's health care department. See Medical Dev. Int'l v. Cal. Dep't Corr. and Rehab., 585 F.3d 1211, 1221-22 (2009) (allowing breach of contract claim to proceed against Receiver in his official capacity in action seeking damages for the "Receiver's refusal to pay for services [plaintiff] performed under contract with the CDCR"). However, Plaintiff is advised that the Receiver's acts or omissions related to inmate medical needs may be protected from suit pursuant to the doctrine of quasi-judicial immunity.

"[A]bsolute quasi-judicial immunity from damages for civil rights violations" applies when non-judicial officers "perform tasks that are an integral part of the judicial process." Mullis v. U.S. Bankr. Court for the Dist. of Nev., 828 F.2d 1385, 1390 (9th Cir. 1987); see also In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002) ("Absolute judicial immunity . . . extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'") (quoting Burns v. Reed, 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part)). The two primary exceptions to judicial immunity arise when the judge's action is "not taken in the judge's judicial capacity," and when the judge's action, "though judicial in nature, is taken in complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12 (1991); see also Burton v. Infinity Capital Mgmt., 753 F.3d 954, 961 (9th Cir. 2014) (immunity exists "even in the absence of a judicial directive so long as the acts were not done

in the clear absence of all jurisdiction") (internal quotation marks omitted).  Receivers may be eligible for quasi-judicial immunity.  <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 442 (9th Cir. 1978) ("[A]bsolute immunity has been extended to other officials of the judiciary: clerks of court, referees and trustees in bankruptcy . . . and receivers."); <u>Patterson v. Kelso</u>, 698 Fed. App'x 393, 394 (9th Cir. 2017) (citing <u>Mosher</u> and affirming dismissal without leave to amend of claim against Kelso on the ground that "Kelso is entitled to quasi-judicial immunity").

The court that instituted the receivership here intended for the Receiver to be protected by quasi-judicial immunity where appropriate.  "In <u>Plata v. Schwarzenegger</u>, N.D. Cal. Case No. CV 01-1351, Judge Henderson, U.S. District Judge for the Northern District of California, established a receivership to manage provision of medical care to California inmates.  In his February 14, 2006 order appointing a receiver ("OAR order"), Judge Henderson appointed Receiver Sillen to 'provide leadership and executive management of the California prison medical health care delivery system with the goals of restructuring day-to-day operations and developing, implementing, and validating a new, sustainable system that provides constitutionally adequate medical care' to inmates." <u>Van Horn v. Hornbeak</u>, 2009 WL 211365, at *2 (E.D. Cal. Jan. 28, 2009).  The Order Appointing Receiver further provided that:

> [t]he Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court.

*Singletary v. Duffy*, 2015 WL 4751164, at \*3 (E.D. Cal. Aug. 11, 2015) (quoting OAR Order at 6).

Kelso was appointed to replace Sillen as Receiver in January 2008. Id. In appointing Kelso,

> the district court stated that "[t]he Receivership must continue to maintain its independence as an arm of the federal courts established to take over state operations . . . ." The district court ordered that "[a]ll powers, privileges, and responsibilities of the Receiver, as set forth in the Court's February 14, 2006 Order Appointing Receiver, shall continue in full effect, except as modified by subsequent orders . . . ."

Id. (internal citations omitted).

Accordingly, numerous courts have found that Kelso is immune from suit for acts or omissions within the scope of the OAR Order relating to prisoner medical care. As the Singletary court explained,

> Even if plaintiff were granted leave to amend his complaint so as to allege that Kelso was aware of plaintiff's medical needs and failed to act upon that knowledge, it appears those allegations would similarly entitle Kelso to absolute quasi-judicial immunity because plaintiff would again be alleging that Kelso

> failed to act within his official capacity as receiver
> of the health care system.

Id. at 4; see also Phillips v. Borders, 2017 WL 5592657, at *4 (C.D. Cal. Nov. 20, 2017) (prisoner's claims were "subject to dismissal" because the "conclusory allegations against Kelso relate solely to his role as a judicially appointed receiver"); Reyes v. Flores, 2016 WL 6803569, at *3 (E.D. Cal. Nov. 17, 2016) (Kelso entitled to quasi-judicial immunity where plaintiff's "allegations solely attack Kelso's status as federal receiver and there is no allegation to support or even imply that Kelso acted 'in the complete absence of all jurisdiction'"); Doyle v. Cal. Dep't Corr. and Rehab., 2014 WL 5524452, at *4 (N.D. Cal. Oct. 31, 2014) (dismissing claims against Kelso with prejudice on the ground of quasi-judicial immunity where prisoner alleged only that Kelso had "the 'ability and power' to address his medical needs").

Courts have concluded that allegations that Kelso "denied [plaintiff] proper medical attention," Martinez v. Beard, 2014 WL 5305883, at *9 (E.D. Cal. Oct. 15, 2014), or failed to monitor the plaintiff's disease, as the FAC appears to allege here, did not show that Kelso "acted in a manner outside of the bounds of all jurisdiction." Williams v. Cal. Dep't Corr. and Rehab., 2015 WL 6669816, at *6 (E.D. Cal. Oct. 29, 2015). However, the Court will grant Plaintiff another opportunity to explain why whatever actions Kelso took were outside the bounds of his jurisdiction or otherwise were not protected by the doctrine of quasi-judicial immunity. Accordingly, the FAC is dismissed, with leave to amend.

**D.   The FAC Fails To Adequately Allege The Personal Participation Of Kelso, Mathis And Lotasztain**

To establish a civil rights violation, a plaintiff must show either the defendant's direct, personal participation in the constitutional violation, or some sufficient causal connection between the defendant's conduct and the alleged violation.   See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).

**1.   Kelso**

Even if Plaintiff is able to allege facts stating a claim against Kelso that falls under an exception to the quasi-judicial immunity doctrine, Plaintiff is advised that government officials may not be held liable under section 1983 simply because their subordinates engaged in unconstitutional conduct.   See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).   Where a plaintiff names a supervisor as a defendant but does not allege that the supervisor directly participated in the constitutional violation, a "sufficient causal connection" to the violation may be shown where the supervisor "set 'in motion a series of acts by others, or knowingly refused to terminate [such acts], which he knew or reasonably should have known, would cause others to inflict the constitutional injury.'"   Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)); see also Preschooler II v. Clark County Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (a supervisor may be held accountable only "for his own culpable action or

inaction in the training, supervision, or control of his
subordinates, for his acquiescence in the constitutional
deprivations of which the complaint is made, or for conduct that
showed a reckless or callous indifference to the rights of
others").

To state a claim against Kelso, Plaintiff must show either
that he directly participated in the constitutional violation or
that his acts or omissions in the training or supervision of his
subordinates had a causal connection to the injury Plaintiff
suffered. Accordingly, the FAC is dismissed, with leave to amend.
Plaintiff is expressly cautioned that he must not allege claims
without a legal and factual basis.

    **2.    Mathis And Lotasztain**

The FAC's only substantive allegation against Mathis and
Lotasztain is that they "failed to provide adequate medical
treatment for a variety of conditions and injuries." (FAC at 5).
This sparse allegation utterly fails to describe the "conditions
and injuries" Plaintiff suffered from, how Mathis and Lotasztain
learned about them, and what they did or failed to do. Nor does
it explain why these Defendants' actions or omissions violated
Plaintiff's civil rights. Plaintiff may not simply attach exhibits
to his pleading without explanation or reference in the hope that
Defendants might be able to guess why he believes they violated
his civil rights. Without more specific allegations explicitly
describing Defendants' acts and omissions, Plaintiff has not

plausibly pled that these Defendants were personally involved in violating his rights or that their actions had any causal connection to the purported constitutional violations. Accordingly, Plaintiff's claims against Mathis and Lotasztain are dismissed, with leave to amend.

**E.     The FAC Fails To State A Deliberate Indifference Claim**

The FAC summarily alleges that all of the Defendants are liable for deliberate indifference to Plaintiff's serious medical needs. (FAC at 5). To state an Eighth Amendment claim based on a prisoner's medical treatment, the prisoner must demonstrate that the defendant was "deliberately indifferent" to his "serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To establish a "serious medical need," the prisoner must show that "failure to treat [his] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citation omitted).

To establish "deliberate indifference" to such a need, the prisoner must demonstrate: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Id. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citations omitted). The defendant must have been subjectively aware of a serious risk

of harm and must have consciously disregarded that risk.  See
Farmer v. Brennan, 511 U.S. 825, 845 (1994).

Plaintiff does not clearly allege what his serious medical
need was, when it arose, how long it existed, or whether it was
ever treated.  Nor does he allege any facts showing that any
Defendant was subjectively aware of his need yet consciously chose
to ignore it.  See, e.g., Austin v. Terhune, 367 F.3d 1167, 1172
(9th Cir. 2004) ("To demonstrate that a prison official was
deliberately indifferent to an inmate's serious mental health
needs, the prisoner must show that 'the official [knew] of and
disregard[ed] an excessive risk to inmate health.'") (quoting
Farmer, 511 U.S. at 838).  Accordingly, the FAC is dismissed, with
leave to amend.

**F.    Plaintiff Fails To State A Cruel And Unusual Punishment Claim**

Alternatively, it is possible that Plaintiff may be attempting
to assert a more general "cruel and unusual punishment" claim.
This ground for an Eighth Amendment claim also fails.[6]

---

[6] "[D]ifferent types of conduct implicate different culpability
standards under the Eighth Amendment[.]"  Moreland v. Las Vegas
Metro. Police Dep't, 159 F.3d 365, 372 (9th Cir. 1998) (discussing
County of Sacramento v. Lewis, 523 U.S. 833 (1998)).  As one court
has explained, although deliberate indifference to serious medical
needs is a type of cruel and unusual punishment prohibited by the
Eighth Amendment,

        [t]here are a number of different types of claims that
        arise under the Eighth Amendment's cruel and unusual
        punishment clause, including distinct claims for basic
        cruel and unusual punishment, for excessive force
        against prisoners, and for deliberate indifference to

Infliction of suffering on prisoners that is "totally without penological justification" violates the Eighth Amendment. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981). Only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). The punishment must constitute "shocking and barbarous treatment." <u>Grummett v. Rushen</u>, 779 F.2d 491, 494 n.1 (9th Cir. 1985). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." <u>Whitley</u>, 475 U.S. at 319. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991) (internal quotation marks and citation omitted). Accordingly, "courts considering a prisoner's [cruel and unusual punishment] claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." <u>Somers v. Thurman</u>, 109 F.3d 614, 622 (9th Cir. 1997) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).

---

prisoners' serious medical needs. Courts apply a different test to each.

<u>Danley v. Allen</u>, 540 F.3d 1298, 1306 (11th Cir. 2008) (citing cases), <u>overruled on other grounds as recognized by</u> <u>Randall v. Scott</u>, 610 F.3d 701, 705-06 (11th Cir. 2010); <u>see also</u> <u>Harris v. Lappin</u>, 2009 WL 789756, at *10 (C.D. Cal. Mar. 19, 2009) ("Although the Eighth Amendment is the source of protection against excessive force and conditions of confinement posing a serious risk of substantial harm, these are two distinct types of wrongs and are evaluated under different legal tests.").

1    Plaintiff does not sue the correctional officer who allegedly

2    raped him in 2008 for violation of his civil rights, and, as noted

3    below, such a claim may be barred by the statute of limitations.

4    The FAC fails to allege that the Defendants whom Plaintiff is suing

5    deliberately subjected him to "shocking and barbarous treatment."

6    Grummett, 779 F.2d at 494 n.1.  It therefore fails to state a

7    "cruel and unusual punishment" claim against them.  Accordingly,

8    the FAC is dismissed, with leave to amend.

9

10   **G.    Certain Claims May Be Barred By The Statute Of Limitations**

11

12   It is unclear whether Plaintiff is claiming that Defendants

13   are liable for acts or omissions at the time of the alleged sexual

14   assault(s) in 2008, or for more recent failures to treat any mental

15   trauma or other injury that he continues to suffer from those

16   assaults.  However, to the extent that Plaintiff is claiming that

17   Defendants are liable because they should have intervened to

18   protect him in 2008, but did not, the Court advises that such

19   claims may be barred by the statute of limitations.

20

21   "The applicable statute of limitations for actions brought

22   pursuant to 42 U.S.C. § 1983 is the forum state's statute of

23   limitations for personal injury actions."  Carpinteria Valley

24   Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 828 (9th Cir.

25   2003).  Effective January 1, 2003, the statute of limitations for

26   personal injury actions in California is two years.  Cal. Code Civ.

27   Proc. § 335.1.

28

However, when a federal court borrows the state statute of limitations, it also borrows the state's tolling rules. Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007). This applies to both statutory and equitable tolling. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law.").

California law provides that when a prisoner is incarcerated for "a term less than life" at the time of accrual of an action, the statute of limitations is statutorily tolled during the time of his imprisonment for up to two more years. See Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (citing Cal. Civ. Proc. Code § 352.1(a)). This tolling provision effectively extends the statute of limitations for the majority of § 1983 claims brought by prisoners to four years, except for claims brought by prisoners sentenced to life without the possibility of parole. See Grasso v. McDonough Power Equipment, Inc., 264 Cal. App. 2d 597, 599-602 (1968), superseded by statute on other grounds (reviewing history of Section 352.1 and the purpose of excluding only prisoners with no hope of parole from its tolling provisions). A prisoner sentenced to life with the possibility of parole, or a lesser determinate or indeterminate term, is eligible for Section 352.1's two-year tolling period. Brooks v. Mercy Hospital, 1 Cal. App. 5th 1, 6 (2016) (affirming continuing validity of Grasso's finding that only prisoners sentenced to life without the possibility of

parole are ineligible for Section 352.1 tolling). However, even if Plaintiff is eligible for statutory tolling, the statute of limitations on claims arising from actions that Plaintiff complained of in 2008 would seemingly have expired in 2012.

"Equitable tolling under California law 'operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" Jones, 393 F.3d 918, 928 (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003)). "Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." Fink, 192 F.3d at 916 (internal quotation marks and citation omitted).

The FAC's allegations do not address Plaintiff's entitlement to statutory or equitable tolling. However, to the extent that Plaintiff is attempting to raise claims based on what Defendants did or did not do in 2008, he is advised that such claims may be barred by the statute of limitations. In any amended complaint, Plaintiff should consider whether any claims are subject to a statute of limitations bar, and whether grounds for tolling exists. Plaintiff is advised that this Order is not a dispositive ruling on any issue. Instead, the Court is dismissing certaom claims that are defective, but granting leave to amend. Furthermore, the Court

is not making any dispositive ruling on the timeliness of the First Amended Complaint or the claims in the complaint. Rather, the Court is simply advising Plaintiff of this potential issue and raising it for Plaintiff's consideration in any amended complaint.

**IV.**

**CONCLUSION**

For the reasons stated above, the First Amended Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Second Amended Complaint. In any amended complaint, Plaintiff shall **cure the defects** described above. **<u>Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the FAC</u>**. The Second Amended Complaint, if any, shall be complete in itself and shall not refer in any manner to the original Complaint or the First Amended Complaint. Its caption page shall bear the designation "Second Amended Complaint" and the case number assigned to this action.

The Second Amended Complaint should be short and concise. In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim

showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and the Defendant (by name) against whom the claim is asserted, and make clear what specific factual allegations support each separate claim. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law or include legal argument.

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiffs' convenience. If Plaintiff utilizes the Notice of Dismissal, he is instructed to clearly state whether he is dismissing the entire action or only certain claims or certain Defendants.**

DATED: May 3, 2018

                        /S/
                SUZANNE H. SEGAL
                UNITED STATES MAGISTRATE JUDGE

1

2
**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR**
3
**ANY OTHER LEGAL DATABASE.**
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28