# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE E. GOMES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID M. MATHIS, M.D., et al.,<br><br>　　　　　Defendants. | Case No. CV 17-7022 SVW (SS)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND** |

## I.
## INTRODUCTION

Plaintiff Lawrence E. Gomes ("Plaintiff"), a California state prisoner proceeding pro se, constructively filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on September 20, 2017. ("Complaint," Dkt. No. 1 at 9). The Court dismissed the Complaint and two subsequent iterations of Plaintiff's claims with leave to amend due to pleading defects.[1] (Dkt. Nos. 8 (Order Dismissing

---

[1] A magistrate judge may dismiss a complaint with leave to amend without the approval of a district judge. See McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991) ("[T]he dismissal of a complaint

Complaint), 12 (Order Dismissing First Amended Complaint), 14 (Order Dismissing Second Amended Complaint)). Pending before the Court is Plaintiff's Third Amended Complaint. ("TAC," Dkt. No. 15).

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). This Court may dismiss such a complaint, or any portion thereof, before service of process if it concludes that the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc). For the reasons stated below, the Court DISMISSES the TAC with leave to amend.

\\
\\
\\
\\
\\

---

with leave to amend is a non-dispositive matter."). Pursuant to Federal Rule of Civil Procedure 72, a plaintiff who disagrees with a magistrate judge's order dismissing a pleading with leave to amend may file an objection with the district judge. See Bastidas v. Chappell, 791 F.3d 1155, 1162 (9th Cir. 2015); see also Hunt v. Pliler, 384 F.3d 1118, 1124 (9th Cir. 2004) ("'District court review of even these nondispositive matters . . . can be compelled upon objection of the party against whom the magistrate has ruled.'") (quoting McKeever, 932 F.2d at 798). Here, Plaintiff has not challenged the dismissal of any of his pleadings before the district judge.

**II.**

**ALLEGATIONS OF THE THIRD AMENDED COMPLAINT**

The sole Defendant named in the TAC is Dr. Mariana Lotasztain ("Lotasztain"), a primary care provider at Solano State Prison. (TAC at 3).[2] Lotasztain is sued in her individual capacity. (Id.).

The TAC broadly alleges that Lotasztain provided "constitutionally inadequate care for Plaintiff's mental and physical conditions." (Id. at 5). With respect to his mental health, Plaintiff states that he suffers continuing psychological problems after being repeatedly raped by a female correction officer at an Arizona prison in 2008. (Id.). According to Plaintiff, Lotasztain failed "to provide PREA (Prison Rape Elimination Act) follow-up care, testing, outside mental health intervention upon request, and denied to speak to the Federal Bureau for PREA Victims." (Id.).

In addition to failing to follow the CDCR's PREA regulations, Lotasztain also discontinued the "medication prescribed by other mental health doctors for [Plaintiff's] ongoing mood disorder, post-traumatic stress disorder, sleep disorder, and other mental and emotional injuries." (Id.). In particular, Plaintiff claims that Lotasztain "took [him] off his Gabapentin in 2017 for no

---

[2] The Court will cite to specific pages of the TAC, including its exhibits, as though they formed a single consecutively paginated document.

3

reason."³ (Id.) (emphasis in original). When Plaintiff informed Lotasztain of his (unspecified) medical need for Gabapentin, "she told [him] to sue her if he didn't like it and that she had no knowledge of [his] PREA assaults." (Id.). However, if Lotasztain had properly reviewed Plaintiff's mental health records, "[she] would have known why and who put [Plaintiff] on Gabapentin[.]" (Id.). Lotasztain's failure to follow unspecified "CCHCS [California Correctional Health Care Services]-2017 PREA DOM [Department Operations Manual] ORDERS[] and delayed treatment" caused Plaintiff "continued mental anguish and some permanent disability." (Id. at 6).

With respect to his physical health, Plaintiff alleges that Lotasztain "refused to send [him] to a heart cardiologist for his ongoing grave heart condition for [his] pacemaker & Afib, in which [his] ejection fraction is only 35% and now 25%."⁴ (Id.). Furthermore, Lotasztain forced Plaintiff to take his insulin at "5:30 a.m. and no food until 7:00 a.m. in a manner that is not in

---

³ "Gabapentin is an anticonvulsant that is used to prevent and control seizures and is also used to relieve nerve pain following shingles. It is also prescribed to treat chronic neuropathic pain or fibromyalgia." Rose v. Berryhill, 256 F. Supp. 3d 1079, 1085 (C.D. Cal. 2017) (internal citations omitted).

⁴ "Ejection fraction is a 'measurement of how much blood the left ventricle pumps out with each contraction.' A normal heart's ejection fraction is between 50%-70%. An ejection fraction between 40% and 55% indicates damage. An ejection fraction under 40% may be evidence of heart failure or cardiomyopathy." Kleveno v. Colvin, 2013 WL 1628715, at *7 (C.D. Cal. Apr. 16, 2013) (internal citations omitted).

4

compliance with American Diabetic Association standards," which caused Plaintiff to "shake, fall out, [and] pee on himself." (Id.).

The TAC's only claim alleges that Lotasztain is liable for deliberate indifference to Plaintiff's serious mental and physical medical needs. (Id.). Plaintiff is seeking $100,000 in compensatory damages, $100,000 in punitive damages, and $100,000 "for current and future testing." (Id.).

**III.**

**DISCUSSION**

The Court must dismiss the TAC pursuant to 28 U.S.C. § 1915A(b) because it violates Federal Rule of Civil Procedure 8. The Court notes that the TAC is Plaintiff's fourth attempt to state a claim, including his original Complaint. While the TAC's allegations show marginal improvement over the prior versions of Plaintiff's claims, it is unclear whether Plaintiff will be able to focus his allegations to state plainly and simply what Lotasztain did or did not do to violate his rights, without irrelevant, extraneous and sometimes incomprehensible allegations or facts.

The Court is not required to permit even a pro se plaintiff to amend his claims indefinitely. See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (leave to amend is properly denied where amendment would be futile). However, because it is not "absolutely clear that the deficiencies of the complaint could not be cured by amendment," Akhtar v. Mesa, 698 F.3d 1202,

5

1212 (9th Cir. 2012) (citation and internal quotation marks omitted), the Court will give Plaintiff one final opportunity to amend his claims. Plaintiff is expressly cautioned that the failure to correct the deficiencies described below may result in a recommendation that this action be dismissed for failure to state a claim. Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) ("[A] district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint.") (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n.3 (9th Cir. 1987)); see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (same).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). Rule 8 may be violated when a pleading "says too little," and "when a pleading says too much." Knapp v. Hogan, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original). However, the courts also have an obligation to give liberal construction to the filings of pro se litigants, especially civil rights claims made by inmates. Blaisdell v. Frappiea, 729 F.3d 1237, 1241 (9th Cir. 2013); see also Erickson v. Pardus, 511 U.S. 89, 94 (2007) (per curiam).

To establish a civil rights violation, a plaintiff must show either the defendant's direct, personal participation in the constitutional violation, or some sufficient causal connection between the defendant's conduct and the alleged violation. See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011). To state a claim for unconstitutional health care services, a prisoner must demonstrate that the defendant was "deliberately indifferent" to his "serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To establish a "serious medical need," the prisoner must show that "failure to treat [the] prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett, 439 F.3d at 1096 (citation omitted); see also Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (the existence of a serious medical need is determined by an objective standard).

To establish "deliberate indifference" to such a need, a prisoner must demonstrate: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Jett, 439 F.3d at 1096. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citation omitted). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim. Id. (citation omitted). The defendant must have been subjectively aware of a serious risk of harm and must have consciously disregarded that risk. See Farmer v. Brennan, 511 U.S. 825, 839

(1994). An "isolated exception" to a defendant's "overall treatment" of a prisoner does not state a deliberate indifference claim. Jett, 439 F.3d at 1096.

The TAC fails to comply with Rule 8 because it still is not clear exactly **which mental or physical conditions** Plaintiff claims constituted a serious medical need, **what Lotasztain consciously did or did not do that jeopardized Plaintiff's health**, and what **harm** ensued from Lotasztain's acts or failures to act.

The Court acknowledges that the attachments to the TAC (if not the TAC itself) plainly reflect that Plaintiff suffers from a wide array of medical conditions. For example, Exhibit 1 is a copy of the first-level response to a grievance filed by Plaintiff in which he requested to have his Gabapentin prescription reinstated, to speak to someone from PREA, and to see another doctor and receive outside intervention. (TAC at 9). The prison's response to the grievance stated in part:

> Your medical records note you have hypertension, heart
> disease requiring intervention in 2010 and placement of
> a biventricular automated implantable cardioverter
> defibrillator (AICD); atrial fibrillation requiring
> life-long anticoagulation, chronic hepatitis C
> infection, prostate enlargement, glaucoma, cholesterol
> issues, history of blood clots in both upper
> extremities, gunshot wound to the left arm and face,
> chronic obstructive lung disease, diabetes, gout and a

8

history of chronic kidney disease. Your current
medication list notes you are prescribed Cymbalta,
Vistaril, Lidocaine patch, morphine sulfate immediate
release (IR) and Tylenol. The Disability and Effective
Communication System lists you as a DPO.

(Id.).[5] Similarly, Exhibit 5 is the first-level response to a grievance Plaintiff filed concerning his request to see a cardiologist. (TAC at 22). That response noted that Plaintiff "suffer[s] from severe congestive heart failure with an ejection fraction of less than 30%." (Id. at 23).

While Plaintiff alleges that he has an unspecified "grave" mental condition arising from his 2008 sexual assault, the TAC fails to state clearly and concisely what, exactly, he believes that Lotasztain did or did not do to violate his federal constitutional rights with respect to the PREA. Instead, Plaintiff merely refers generally to the CCHCS's PREA policy (attached as Exhibit 3 to the TAC) and states that Lotasztain somehow failed to follow the guidelines. The following passage is simply incomprehensible:

> Mariana Lotasztain MD failed to uphold the CCHCS Volume
> 1 - Governance and Administration Chapter 16, 1.16.2

---

[5] "DPO" is a mobility code used by the CDCR to designate an "intermittent wheelchair user. DPO inmates require a lower bunk and wheelchair accessible path of travel, but do not require wheelchair use inside the cell or a wheelchair accessible cell." Howard v. Wang, 2014 WL 3687728, at *5 (E.D. Cal. July 24, 2014).

9

> Prison Rape Elimination Act Procedure's [sic], Effective Date 12/2003 Revision 7/2007 at page 1-2 and attachment A - Treatment recommendation for evaluation and follow up care, testing, outside mental health interventions for PTSD as required for all PREA victims.

(Id. at 5). Not only is the violation of a prison policy or regulation insufficient, by itself, to constitute a violation of a federal constitutional right, but also, many of the portions of the PREA procedure highlighted by Plaintiff in Exhibit 3 would seemingly not apply to a patient's treatment ten years after an alleged sexual assault. (See id. at 16 (handwritten checkmarks next to each of nine items on a list of actions that licensed health care staff must take pursuant to the CDCR's Department Operations Manual for "incidents reported within 72 hours of the event," including ensuring that the patient does "not shower, remove clothing, use rest room facilities, or consume liquids")). Additionally, it is unclear how Lotasztain's refusal "to speak to the Federal Bureau for PREA Victims" put Plaintiff in jeopardy or violated his constitutional rights. Plaintiff does not explain how and when Lotasztain learned that he had been a victim of sexual assault while incarcerated, which specific provisions of the prison's PREA procedures Lotasztain failed to follow, why Lotasztain knew that the failure to follow those specific provisions would cause Plaintiff unnecessary harm, or what specific harm resulted from those failures.

Similarly, while Plaintiff complains that Lotasztain discontinued medications prescribed by other mental health providers for psychological conditions that may or may not have any connection to the 2008 sexual assault, the only example he gives is the prescription for Gabapentin, which he claims Lotasztain discontinued "for no reason." (TAC at 5). However, Exhibit 1 to the TAC explains that Plaintiff was prescribed Gabapentin to ease physical pain, in particular in his legs, that was disrupting his sleep. (Id. at 9). Accordingly, it is unclear if Gabapentin was prescribed by a mental health provider and if it is one of the medications (or the only medication) that Plaintiff was referring to when he alleged that Lotasztain wrongly discontinued medications prescribed by mental health providers.

With respect to his heart condition, Plaintiff adequately alleges that he had a serious medical condition with an ejection faction of 35% to 25%. (Id. at 6). However, he does not explain why the heart care he was receiving at the prison was inadequate, why and how Lotasztain knew that he required an immediate consultation with a cardiologist, or what harm he suffered from Lotasztain's failure to refer him to a cardiologist. Similarly, with respect to his diabetes, Plaintiff adequately alleges that he had a serious medical condition and that he suffered harm from low blood sugar as a consequence of being forced to take his diabetes medication in the early morning without food, two hours before breakfast. However, the TAC does not explain whether Plaintiff ever discussed the physical effects he suffered with Lotasztain or that she ever learned of them from any other source.

In addition to these substantive deficiencies, the presentation of Plaintiff's various conditions in the TAC is disjointed, as Plaintiff's claims seem to fluctuate between conclusory allegations of constitutional violations and vague contentions that Lotasztain failed to follow unspecified prison regulations. As a result, the TAC is challenging to understand and does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Kwan v. SanMedica Int'l 854 F.3d 1088, 1093 (9th Cir. 2017) (holding that complaints may be dismissed based on either lack of a cognizable legal theory or insufficient facts under a cognizable theory). Also, some of the Exhibits do not have any apparent relationship to the violations alleged in the TAC. For example, the last two pages of Exhibit 5 are a letter written by Plaintiff addressed to "Attorneys" in which Plaintiff appears to complain of trademark infringement of his "LG" brand of children's toys. (Id. at 24-25). These extraneous, unexplained and unnecessary documents further obscure whatever actual claims Plaintiff may be trying to assert, and should be omitted in any further amendments to the complaint.

To properly plead his claims, Plaintiff should allege only the facts that are relevant to the claim against Lotasztain that give rise to a § 1983 action. Without more specific allegations explicitly describing Lotasztain's particular acts and omissions, Plaintiff has not plausibly pled that Lotasztain was personally involved in violating his rights or that her actions had any causal

connection to the purported constitutional violations. Accordingly, the TAC is dismissed, with leave to amend.

**IV.**

**CONCLUSION**

For the reasons stated above, the Third Amended Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Fourth Amended Complaint. In any amended complaint, Plaintiff shall **cure the defects** described above. **<u>Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the TAC</u>**. The Fourth Amended Complaint, if any, shall be complete in itself and shall not refer in any manner to the original Complaint, the FAC, the SAC or the TAC. Its caption page shall bear the designation "Fourth Amended Complaint" and the case number assigned to this action.

The Fourth Amended Complaint should be **short** and **concise**. In any amended complaint, Plaintiff should confine his allegations to only those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should

identify the nature of each separate legal claim and the Defendant (by name) against whom the claim is asserted, and make clear what specific factual allegations support each separate claim. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach evidence to support his claims.

**Plaintiff is explicitly cautioned that failure to timely file a Fourth Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). <u>Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiffs' convenience. If Plaintiff utilizes the Notice of Dismissal, he is instructed to clearly state whether he is dismissing the entire action or only certain claims or certain Defendants.</u>**

DATED: November 28, 2018

                                            /S/
                                  SUZANNE H. SEGAL
                                  UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**

14